No. 36.—M. A. KEITH, plaintiff in error, *vs.* DAVIS WHELCHEL, defendant in error.

[1.] A surety on a claim bond against whom judgment for damages and costs has been given, together with the claimant, and who has paid off the *fi. fa.* is entitled, under our Statute, to control the *fi. fa.* for the purpose of re-imbursing himself out of the effects of the principal claimant.

Claim, in Hall Superior Court.    Tried before Judge JACKSON, September Term, 1850.

The facts of this case are as follows:    M. A. Keith was security of Redding Pinson on a claim bond in a case tried in Cherokee Superior Court, in which the Jury had found damages, and judgment was entered up, and *fi. fa.* issued against Pinson and Keith for the damages and costs.

This *fi. fa.* was paid off by Keith, the security, who afterwards caused it to be levied on a lot of land in the County of Hall, as the property of Pinson.    The land was claimed by Davis Whelchel.

On the trial, the plaintiff, Keith, offered the *fi. fa.* in evidence. It was objected to on the ground, that the security on a claim bond, where judgment had been given, and *fi. fa.* issued for damages and costs, and who had paid off the *fi. fa.* had no right to use the *fi. fa.* to re-imburse himself out of the effects of the principal claimant.    The Court so held and rejected the *fi. fa.*

To which decision the plaintiff in execution excepted.

HILLYER and OVERBY, for plaintiff in error.

PEEPLES, for defendant.

*By the Court.*—NISBET, J. delivering the opinion.

[1.] By the 4th section of the Act of 1826, sureties on bond, note or other contract, *if sued thereon,* are authorized to make

special defence, and if it is made to appear to the Court, that they are sureties only, and not interested in the consideration of the contract sued on, the judgment is to be entered accordingly, and the sureties are entitled to control the execution against their principal in the event of their paying it. It is not necessary, in order to charge a surety on a claim bond, to sue upon the bond; but in cases of claim where there is a verdict subjecting the property, and for damages, judgment for damages may be entered up by the plaintiff on execution against the principal and surety, upon motion. Such has been the decision of this Court.

Now, this being so, it is to be conceded that the surety on the claim bond has no means of availing himself of the privileges of defence given by this section of the Act of 1826, and as the right of control depends upon the fact of a suit against him and a defence, although he is surety *on bond*, he is not by this section entitled to the control of the execution against his principal for remuneration. A subsequent Act passed in 1831, goes farther: By that Act, if sureties on bond, note or other contract, *shall fail*, *at the trial*, to make the defence authorized by the Act of 1826, they shall, nevertheless, be entitled to control the execution against their principal, where they pay the debt, provided they make it satisfactorily to appear to the Court, from which the execution issued, that they were *bona fide* sureties only upon the original bond, note or contract, which was the foundation of the judgment and execution. In my judgment, the surety on the claim bond is entitled to the control of the execution against his principal under this Act of 1831. It is contended that he is not, because, although he is a surety *on bond*, yet the sureties contemplated are only such as, by the previous Act of 1826, are liable to suit, and upon that suit are entitled to make special defence ; and inasmuch as sureties on claim bonds are not liable to suit, (judgment by the ruling of this Court passing against them by motion,) and cannot therefore make defence, *therefore*, they are not embraced in this Act of 1831. In other words, the condition precedent to the privilege or right conferred by the Act of 1831 upon sureties, is that they occupy, in the law, such

position as will subject them to a suit in that character. This reasoning is not satisfactory to my mind. The special defence spoken of in the 4th section of the Act of 1826, is not a duty or necessary legal obligation, but it is a *privilege*, which the surety, *when sued,* may avail himself of or not. *When sued* on the bond, note or other contract, the Act declares *that it shall and may be lawful for him to make defence,* &c. If there is no suit, he has, by that Act, no right of control. If he is sued, then it is lawful for him to make the defence, and if he makes it, he is entitled to the control, and if he does not, he is not entitled to the control. Such is his position under the Act of 1826. The Act of 1831, considering him in the position he has placed himself in, by failing to make the defence, gives him the control, wholly, irrespective of that Act. The disability under which the surety labored, under the Act of 1826, was this—failing to make defence, he could not afterwards, in any other way, get the control. The Act of 1831 removes this disability, and says that he shall be entitled to the control. That is to say, all sureties who are *disabled* by not complying with the Act of 1826, are *enabled* by the Act of 1831. If such sureties are relieved by the Act of 1831, and are declared entitled to the control, *a fortiori* are sureties of the same class, and so described in the Act of 1831, who have never come under such disabilities, entitled to the control. The surety on the claim bond has never come under this disability, because, whilst he is *surety on bond,* in the language of the Act, yet he is not liable to suit on it, and is not, therefore, put upon his election to make defence or not. How absurd to give to one surety *on bond,* who has failed to provide for himself, as he may do under the law, the right of controling an execution against his principal for his remuneration, when he has paid it, and to deny that right to another *surety on bond,* who has no such right of providing for himself, and who has made no such failure. The condition of him who is in laches is made better than that of him who is not in laches, upon this construction. The reasoning to support it may be to exhibit its injustice presented thus : A, a surety on bond, although described as a beneficiary in the Act of 1831, is not entitled to its benefits, because

B, another surety on bond, but who occupies certain legal relations to the rest of the world which A does not hold, is entitled to the same benefits which he has forfeited by neglect, under the previous Act of 1826. If it be conceded that the letter of the Act of 1831 raises some doubt about its application to sureties upon claim bonds, it will not be denied that they fall within its reason and spirit. There is no reason, whatever, why sureties, generally, should be enabled to control executions against their principals, whilst this class is denied that power. Indeed, the inability of these sureties to defend as such, would seem to be a good reason why they should be enabled to control the execution by a proceeding subsequent to the judgment. The obvious intent of the Act of 1831 is to enable all persons who are sureties, and against whom judgment has passed, and who have paid the debt, upon these facts being made to appear, to control the judgment against their principal for indemnification. Against the surety on a claim bond in this case, judgment has been entered, and upon his complying with the requirements of the Act by the prescribed proceeding, it seems to me that he must be, under that Act, entitled to the control. This construction is in accordance with the whole drift of our legislation in relation to this subject. Sureties are, moreover, a favored class in the law, and Acts for their benefit are to be liberally construed.

If I am wrong, however, in this construction of the Act of 1831, we all agree that the surety, in this case, is authorized to control the execution under the Act of 1810. The 5th section is in the following words : " When it shall appear, by the Sheriff's return *on any execution or executions*, that the same has been paid by a security or securities, it shall be the duty of the Clerk to make such entry on such docket book, and such security or securities shall have the use and control of said execution, for the purpose of remunerating him or themselves out of the principal for whom he or they stood security." The terms of this Act are very general. They embrace *any* execution paid by a surety, which is so returned by the Sheriff. It is made the duty of the Clerk to transfer the entry to his docket book. Then the Act proceeds to declare that the surety shall have the control. The

Keith *vs.* Whelchel.

construction of this Act has been, that it applies only to sureties of record—such as sureties on appeal and upon stay of execution. Where the record shows the relation of principal and surety, there no proceeding is necessary to establish the fact of suretyship. In all other cases, at the time of the passage of the Act and since, until the Act of 1826, this relation could be established only by suit by the surety against his principal. This is, without doubt, the true construction. Surety on claim bond, is a surety of record. If not before, since the decision of this Court, authorizing judgment against him, upon motion, his bond is in the nature, after the verdict for the plaintiff in execution, of an acknowledgment of record. The bond, the proceeding on the claim, and the judgment against him, as surety, are all of record. The case, therefore, falls within the letter and the received construction. There is nothing inconsistent with this idea in the subsequent Acts relative to sureties on appeal and upon stay of execution. They are in relation to them alone, and do not embrace sureties on claim bonds. As to them, they are enlarging Statutes, and they leave the Act of 1810 in full force as to other sureties of record, of which class the surety on claim bond, as we have seen, is one.

Security, upon putting in claims, was required by the Judiciary Act of 1799, which Act, in this regard, was superseded by the Act of 1821. It is, therefore, reasonable to suppose that the Legislature, in the subsequent Act of 1810, had them in view, as well as other sureties of record.

The demurrer to the admissibility of the execution in this case, was sustained upon the ground, that the surety on claim bonds could not control it for remuneration. No other question is made in the record. *Prince,* 436, 461, 470.

Let the judgment be reversed.